*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KOBYLSKI, Minors.

UNPUBLISHED
November 10, 2022

No. 360523
Oakland Circuit Court
Family Division
LC No. 2019-879203-NA

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, EMK, ENK, and HRK, under MCL 712A.19b(3)(b)(*ii*), (g), and (j).[1] We affirm.

## I. FACTS AND PROCEEDINGS

Respondent has a history of housing instability, substance abuse, and association with abusive partners. Respondent became involved with Richard Jackson in approximately 2017. In 2018, Children's Protective Services (CPS) investigated respondent on four separate occasions for complaints that the children were exposed to domestic violence and that the family's home lacked heat. None of the complaints were substantiated. Respondent declined an offer of services in April 2018 following the fourth investigation, thus, she was not referred for services at any point in 2018.

In March 2019, respondent was evicted from her trailer home. The family temporarily resided in a neighbor's trailer and respondent allowed Jackson to stay overnight, contrary to the neighbor's wishes. During that same time, EMK disclosed that Jackson sent her text messages requesting nude pictures of herself. Respondent reported this to law enforcement, but charges were not filed.

---

[1] The father of EMK and ENK is deceased. The parental rights of HRK's father and respondent's ex-husband, Donald Walden III, are still before the trial court and not at issue in this appeal.

In April 2019, EMK was expelled from school for fighting and became the subject of a juvenile delinquency proceeding. Between April and June of 2019, respondent and the children left their neighbor's trailer and began to reside in hotels. Jackson was incarcerated in the spring and summer of 2019 for reasons unrelated to respondent and the children.

In June 2019, respondent took the children to live in Ohio and thus failed to take EMK to an appointment with her caseworker and to a dispositional hearing for her delinquency case. Therefore, the court issued an Order to Take Into Custody (OTTIC).

In the fall of 2019, respondent and the children returned to Michigan to live in a hotel. After Jackson was released from his incarceration, respondent allowed him to stay in the one-room hotel room with her and the three children. On November 25, 2019, Jackson sexually assaulted EMK in the hotel room. On December 1, 2019, EMK disclosed the sexual assault to respondent. Respondent waited a week before reporting the assault to law enforcement. This led to a CPS investigation for improper supervision and physical neglect and then a petition being filed for the trial court to take jurisdiction over the children and to terminate respondent's parental rights at the initial disposition. All three children were removed from respondent's care. EMK was taken into police custody and sent to Children's Village pursuant to the OTTIC resulting from her failure to appear for her delinquency proceedings, while CPS removed ENK and HRK and placed them with respondent's brother, Robert. When EMK was released from Children's Village, she too was placed with Robert.

Following bifurcated evidentiary hearings, the trial court found clear and convincing evidence to support several statutory grounds for termination and further found that termination of respondent's parental rights was in the children's best interests. Accordingly, the trial court terminated respondent's parental rights.

Respondent now appeals.

## II. STATUTORY GROUNDS

Respondent argues that the trial court erred by finding that petitioner established a statutory ground for termination by clear and convincing evidence. We disagree.

In an action to terminate parental rights, the petitioner must prove by clear and convincing evidence that at least one statutory ground for termination in MCL 712A.19b(3) exists. MCR 3.977(A)(3) and (H)(3); *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). The trial court's decision is reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356. A finding is clearly erroneous when the reviewing court is left with the firm and definite conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j), which provide that a trial court may terminate parental rights if it finds by clear and convincing evidence any of the following:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

* * *

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Petitioner is required to prove only one statutory ground for termination. *In re Trejo*, 462 Mich at 356.

The trial court did not clearly err when it found by clear and convincing evidence that petitioner had established grounds for terminating respondent's parental rights under MCL 712A.19b(3)(b)(*ii*). The evidence established that Jackson sexually assaulted EMK and that respondent delayed a week in reporting the assault after EMK told her about it. The evidence also established that respondent was aware that Jackson had previously sent EMK text messages requesting that she send Jackson nude photographs of herself. In addition, the evidence established that, during a CARE House interview, HRK disclosed that Jackson touched her private parts while she was left in a hotel room alone with him. Further, the evidence showed that there was a history of physical violence between respondent and Jackson, and that EMK tried to intervene to protect respondent while ENK would try to shield HRK from witnessing the disputes. Respondent failed to protect the children by allowing Jackson to stay in the one-room hotel room where respondent and the three girls slept despite his history of sexually inappropriate behavior and domestic violence.

On appeal, respondent minimizes her hesitation to report Jackson's sexual assault of EMK by presenting herself as caught in a dilemma between redressing the assault and subjecting EMK to the stress of a police investigation. However, even if respondent had promptly reported the incident, her history with Jackson demonstrated that she would likely continue to expose the children to Jackson and other dangerous men.[2] Indeed, respondent persisted in her relationship

---

[2] In 2012, respondent reported to Wisconsin CPS and the Waukesha Police Department that EMK and ENK told her that Walden "peed in their mouth(s)" in 2009 when she and the minor children were living with him in Wisconsin. Respondent did not pursue prosecution because she was in

with Jackson even though he had physically assaulted her in the children's presence. When respondent lost her home and relied on a neighbor to shelter her family, she jeopardized that arrangement by allowing Jackson to stay overnight at the neighbor's trailer against the neighbor's rule. She also allowed Jackson to stay with her family in the one-room hotel room after Jackson was released from incarceration, after Jackson previously sent EMK requests for inappropriate pictures of herself, and despite his known problem with substance abuse, which the children claimed frequently occurred in their presence. Respondent also spoke favorably about Jackson in her testimony and gave improbable explanations and excuses for the domestic violence incidents. Respondent persisted in her relationship with Jackson despite that the children recognized his harmful influence on respondent, and that they did not trust her to protect them from Jackson. Accordingly, the evidence supports the trial court's finding under MCL 712A.19b(3)(b)(*ii*) that the children were reasonably likely to suffer abuse by Jackson or another partner of respondent in the foreseeable future if placed in respondent's home, as she continually failed to protect the children, despite having the opportunity to do so, by allowing Jackson around the children.

Respondent argues on appeal that petitioner missed opportunities to intervene and help her family when it failed to provide services after any of the four investigations in 2018. This argument ignores that respondent was offered services in April 2018 by a CPS caseworker and that she declined, indicating that she did not need services for the home. Further, the 2018 investigations occurred while the family resided in a trailer in Clarkston and there was no evidence that this home was inadequate. The CPS caseworker observed that the home was materially adequate and had sufficient food. Respondent verified that she had resolved a short-term utility shutoff. None of the prior investigations were substantiated or led to judicial proceedings. With respect to the instant proceeding, services are not required where aggravated circumstances are involved. *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019); MCL 712A.19a(2). The evidence that respondent failed to protect EMK from Jackson, who sexually assaulted EMK by digitally penetrating her vagina, qualified as an aggravated circumstance that relieved petitioner of its obligation to provide reunification services. See MCL 712A.19a(2) and MCL 722.638(1)(a)(*ii*). Accordingly, the trial court did not clearly err by terminating respondent's parental rights without affording her an opportunity to participate in reunification services.[3]

## III. BEST INTERESTS

Respondent argues that the trial court clearly erred when it found by a preponderance of the evidence that termination of her parental rights was in the children's best interests. We disagree.

---

the process of moving from Michigan to Florida. While in Florida in 2012, respondent's friend sexually assaulted EMK and ENK. Respondent reported the sexual abuse to the police and the man was convicted of multiple counts of criminal sexual conduct and sentenced to life in prison.

[3] Only one statutory ground is required to terminate a respondent's parental rights; therefore, we need not address respondent's argument that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(g) and (j). See *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012).

Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds that termination is in the children's best interests. MCL 712A.19b(5). The trial court's best-interest decision is reviewed for clear error. *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

"Even if the trial court finds that the [petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5). "The trial court should weigh all the evidence available to determine [a child's] best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In *In re White*, this Court stated:

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*Id*. at 713-714 (citation and quotation marks omitted).]

The testimony at the best-interest hearing fully supports the trial court's finding that a preponderance of the evidence established that termination of respondent's parental rights was in the children's best interests. The testimony established that any bond present between respondent and the three children was not a parental bond and was unhealthy. Both EMK and ENK recognized that they acted more like a parent than respondent and disclosed that they felt more mature than respondent. EMK and HRK indicated a desire to have contact with respondent just to see how she was doing. They were concerned about respondent's well-being, but they did not trust her to be concerned about them. ENK did not want contact with respondent. All three children stated that they did not want to be returned to respondent's care. A psychologist who evaluated the children testified that the children would not feel safe if respondent had uncontrolled contact with them. The trial court found that the children's expressed fear and reservations regarding future contact with respondent demonstrated that any bond they had with respondent was not significant enough for the court to find that termination was not in their best interests.

The trial court also properly found that the evidence supported a conclusion that respondent did not have the ability to appropriately parent. Respondent repeatedly failed to protect the children from sexual abuse by her male companions. In addition, EMK missed her first semester of high school because respondent failed to enroll her, apparently to evade the delinquency proceeding. Further, the testimony established that respondent frequently left the children without proper supervision and basic necessities, forcing the children to seek food from neighbors and hotel staff. EMK and ENK both testified that they took on the role of parent for HRK to ensure she was fed and prepared for school. The trial court also determined that the evidence established that respondent chose men and drugs over the children. The trial court heard testimony that

respondent was involved with police twice since the filing of the petition. On one occasion, she was so intoxicated that the police determined she needed medical assistance. On the other, respondent was found with her new fiancé, who was on a five-day methamphetamine high. The trial court accurately found that respondent's recent police involvement indicated that she had done nothing to address the concerns regarding her parenting ability or substance abuse issues and that she was likely to continue to choose drugs and men over the children.

The trial court further found that respondent was unable to provide the children with the permanence, stability, and finality that they needed. There was ample evidence to support this finding. All of the children suffered from anxiety and depression attributable to their chaotic homelife with respondent. The children were exposed to domestic violence, substance abuse, and sexual abuse while in respondent's care. Conversely, while in relative placement with Robert, the children succeed in school, attend therapy, and feel safe and protected. Robert testified that he was willing to allow visitation with respondent so long as he had authority to intervene if respondent acted inappropriately. Termination of parental rights would enable the children to feel secure in their home, with the option of seeing respondent on their own terms. The trial court did not clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Colleen A. O'Brien
/s/ James Robert Redford